We'll move to our next case, Kadiyala v. Bank of America, Ms. Lewis. Good morning, Your Honors. If it pleases the Court, my name is Brooke Lewis. I represent the appellant, Ravi Kadiyala. I've observed eight minutes for argument and two for rebuttal. We request this Court vacate the order entered by the District Court granting summary judgment on count one of the complaint for the reasons as set forth in our briefs. Count one is a breach of contract claim. The contract that we're referring to in this case is the OBA, the Online Banking Agreement, which is individually agreed to by each individual user as they sign up for their own online ID and passcode. Did anyone suggest imple- what's this other fellow's name, Putski? Pupke. Pardon? Pupke. Pupke, I'm sorry. Did anyone suggest impleting Pupke so that Pupke and Kadiyala could fight it out and  Absolutely, Your Honor. The problem with that is that we are from when we came into this long after everything had already been settled and done in the underlying District Court. As I've sort of intimated in our brief, we would have probably done it slightly differently. However, that doesn't negate the current claim that we've got. If this did get sent down to the lower court, I suspect that we would bring Pupke in as a third defendant and everybody could all fight it out over not just this breach of contract claim, but other claims that Mr. Kadiyala has against Mr. Pupke. That said, the claim against the bank is for that specific breach of the OBA, wherein Mr. Kadiyala had the authority through the CCR, through the various documents that were related to the accounts of EIM, the company. He had the authority to make transfers, to do basically anything that he wanted to do, including make his own signature cards, including write cashier's checks, and all of that is set forth in the CCR. Now, the bank's position appears to be that the CCR is restricted to a single solitary account. Now, obviously all of these documents are made by the bank and put together by the bank. The CCR and the signature cards, which the bank contends both are only for individual accounts and neither can be used for multiple accounts of the same company. The signature card has specific places in the document to set forth the account number, what kind of account it is, and all sorts of other information that leads one to understand that that signature card is in fact for a account. The CCR, on the other hand, if one actually reads the document itself, it goes to all accounts of the company. It goes to overriding control of not just the accounts, but as to the signature cards that one can file. Now, in the CCR, in the language, there's a great deal of language and it's very, very small in the CCR. However, that the two individuals listed on the most recent CCR, which are Mr. Pupke and Mr. Kadiala, have the authority to execute and deliver electronic funds transfers agreements, make transfers and withdrawals by electronic transfer on behalf of the corporation, to whatever other actions or enter into whatever other agreements relating to the accounts, plural, or to take investment of funds in such accounts with the bank, the CCR on its face is related entirely to- It sounds kind of anarchic, doesn't it? I don't quite understand what you're talking about. That you have these two people, each of whom has kind of total authority? How can that work? Each of them can draw out everything? Yes, Your Honor. On the face of the document, that's what it says. And then you combine that with the further information that was given by Mr. Kadiala to the bank after Mr. Pupke reported in multiple varying and conflicting ways the purported fraud that he accused Mr. Kadiala of. Mr. Kadiala provided the bank with various corporation documents, with the sale documents, with all of the emails that indicated that he had full authority over the account. He had full financial control over EIM's accounts. Did Pupke have this similar control? No. Pupke had control through the bank documents to do whatever he wanted with the bank accounts. However, in EIM, the company, Mr. Kadiala had full financial and operational control 100% as of the date transfers were made. How does it relate to the point, though, you made previously about the text of the CCR? How does what relate? Well, when you read something from the CCR, it sounded as if Kadiala and Pupke have independent, equivalent total authority. Correct. Through the bank's perspective, on the banking documents, both Mr. Pupke and Mr. Kadiala have full authority to make transfers, to write signature cards, to take out debit cards, to do whatever they want. In EIM's documents, after the transfer and after Mr. Kadiala invested a significant sum of money in the company, Mr. Kadiala had a 49% ownership and 100% operational and financial control. How does that relate to the CCR? Is it that transactions involved in EIM are not subject to that first grant of authority that you read from the CCR? No, the CCR is the bank's document, so if, for example... So the bank doesn't care whether it's Kadiala or Pupke asking for something, but Kadiala cares because of this... Right. According to Kadiala's agreement with Pupke, within EIM, Kadiala is the one who should be making all of the decisions. So as I've stated, the online banking agreement is the contract between Kadiala and Bank of America. Kadiala performed under the online banking agreement by accessing and utilizing the accounts only as set forth in the OBA and only when he had the authority within EIM to do so. So he had applied for online access prior to the closing of the deal. After the closing of the deal is when he actually accessed the accounts, is when he actually performed the transfers, after it was within his rights as the partial owner and as the full total operating control of EIM, the company. Our allegation is that Bank of America breached the OBA by stopping payment on the cashier's checks, reversing the transfers, and putting the money back in Pupke's hands, who immediately withdrew it and took off. Now, this happened after an investigation that could not in any good faith be called an investigation, given that Mr. Pupke reported everything being stolen on the 7th and they reversed the transfers and gave the money back to Pupke without freezing it on the 7th. Kadiala's damages include that he lost his corporate control over EIM's accounts, given that all of the money was taken out of his control by Bank of America, despite the fact that he had full control of it through the CCR and through EIM's documents. He lost his investment money. Now, yes, I absolutely agree that Pupke should be brought into this if this gets back down to the lower court. And quite frankly, even if this doesn't go back to the lower court, there's going to be some issues with Mr. Pupke. However, that doesn't negate the issues with the bank. Rather than Bank of America following the restrictions and permissions inherent in their own documents, which they drafted, which were signed by the relevant people, which have the relevant people's names on them, instead of following their own documents and allowing Kadiala to transfer the monies and draw on the cashier's checks without interference, they stopped payment on the cashier's checks, returned the money to Mr. Pupke, and allowed Mr. Pupke to continue his fraud and his theft from Mr. Kadiala. For the reasons I set forth today and in our briefs, viewing all facts and drawing all inferences in favor of Mr. Kadiala, because this was a grant of summary judgment on the summary judgment motion of the bank, the court should reverse the district court's order on the summary judgment as to count one of the complaint and remand the case back to the district court for further proceedings. Thank you. Thank you, Ms. Lewis. Mr. Cook. Good morning, Your Honors. William Cook appearing here on behalf of Bank of America. There's two issues I want to address, Your Honor. One, that there was no contract between Mr. Kadiala. Why didn't the bank implede Pupke? Your Honor, I don't know why that didn't happen. I think they were probably content to simply defend alone on the two arguments that I'm going to make here, that there's no contract between the parties here and also that there was no breach of any agreement by the bank whatsoever. I think the one background that counsel is leaving out here is that all we're dealing here with are accounts between Bank of America and this corporate entity EIM. We're not dealing with any personal accounts with Mr. Kadiala. That's important when we're considering their argument about the online banking agreement being a contract with Mr. Kadiala. It simply isn't. This online banking agreement is governed by all the account documents that apply to EIM's accounts. So when Mr. Kadiala is accessing these accounts online, he's only accessing them as a representative, as somebody for EIM. He had authority for one account, and therefore he could access these accounts online. But when he's doing that, he's not doing that individually. He's doing that solely as a corporate representative. So this online banking agreement is not something he's agreeing to personally. This is simply an agreement that is governed by all these contracts that apply to EIM. I think that's made clear in the online banking agreement itself, where it says this agreement allows customers to access their accounts online. The customer here is EIM. The customer is not Mr. Kadiala. So there's no contract here, Your Honor. All the accounts, all the contracts are simply between Bank of America and EIM. He hasn't alleged a third-party beneficiary theory, so there's simply no contract here between the parties. And if he has no contract, he can't enforce a breach of contract claim against the bank. The other argument, Your Honor, is that there's no breach here. Even if Mr. Kadiala could enforce these contracts, he still loses because there's no breach of the agreements. What I think Mr. Kadiala misunderstands is that there are two separate accounts here. We've got one account ending in numbers 3998, another account ending in 9378. There are separate documents that apply to account 3998 and separate documents that apply to account 9378. So there are corporate resolutions, the CCRs, and signature cards that apply specifically to that account 3998 and the same thing that applies to the separate account. Different people had different authority according to those two accounts. Under 3998, there were only two individuals who had authority. That was Mark Pupke and Marie Pupke. And under 9378, there were two individuals who had authority, Mark Pupke and Robbie Kadiala. The problem comes in is because Mr. Kadiala attempted to transfer money from that account 3998 over to account 9378, but he didn't have the authority to do that. Only two individuals had that authority, and that was not Mr. Kadiala. So when he made that transaction and that transfer, that was unauthorized. That was inconsistent with the signature cards that apply to those accounts. What Mr. Kadiala is arguing is that this corporate resolution that applied to account 9378 governed all the accounts, but that's just not true. The affidavit from the Bank of America representative makes clear that there are separate accounts with separate agreements. So the agreement that applies to 9378 doesn't govern all the corporate documents that apply to EIM. There's no overlapping. There's no overriding. They're completely separate. So Mr. Kadiala can't rely on our corporate resolution for account 9378 to say it gives him authority for an entirely separate account, especially when the documents for that other account say he doesn't have that authority. So, Your Honor, I think also the corporate resolutions, I think they show that when somebody's acting in those situations, they are specific just to those accounts. So there's nothing in what Mr. Kadiala raises to say that there is any overlap between the agreements that simply doesn't exist. Now, they also argue that there's a breach of the online banking agreement, but, again, that's not true. The issue goes back to authority. And they say he had access to the accounts online, and therefore he could make the transactions, but, again, that's not true. There's a difference here between access and authority. So the authority still goes back to what the document said, what the signature card said. And the signature cards make absolutely clear that Mr. Kadiala did not have authority over account 3998. He didn't have the authority to make those transfers. There's nothing in the online banking agreement that says he somehow has different access than what he would have had otherwise. In fact, the online banking agreement says something differently. It says this agreement does not change any of the other contracts that you have with the bank. So those still govern. The signature cards still govern. They still apply. They say that only Mr. Kadiala had the authority, or he did not have the authority to make any transfers from 3998. And I think, Your Honor, I think the district court, and I think you've mentioned right, that this is really not a dispute between Bank of America and Mr. Kadiala. This is really a dispute between Mr. Pupke and Mr. Kadiala. The bank did everything right. They looked at their documents during the investigation, and they looked and said, no, Mr. Kadiala clearly did not have the authority to make these transfers. We can't honor them. We don't have to honor them, and we're not going to. So there was no breach of the agreement. There was no contract. We think summary judgment was proper, and we ask that the court affirm. Okay. Well, thank you very much, Mr. Pupke. Ms. Lewis, do you have anything further? I'd first like to address the ending statement of counsel that the bank did everything right. Again, there was no investigation. It happened immediately without any looking into any of the documents and what they actually say versus what the bank wants them to say. I realize that the affidavit says what it says from the bank. However, if you read the documents themselves, the documents themselves state that they are for all accounts, that the two people, that the certified copy of corporate resolutions, when it's put into effect, goes to accounts of that company. It doesn't specify specific accounts. The only indication that it specifies a specific account is a handwritten, there's no testimony in the record and there's no evidence in the record as to when that number was written in, a handwritten account number across the top of the page. There's no space in the document that the bank drafted to indicate this applies to one particular account or specific accounts. Second, as to the breach itself, the signature card, just so your owners have easy access to it, there's a copy of a signature card at document 19-5 and the CCR is in the supplemental appendix at SA48. Again, the documents must be read on the face of the documents themselves and must be construed against the drafter, which is, again, Bank of America. Those documents do set forth that the CCR applies to all accounts of the company. And again, I'd ask that the holding of the district court has to count one on the summary judgment motion, be reversed and remanded. Thank you. Okay, thank you, Ms. Lewis and Mr. Cook.